King, J.
Tbe plaintiff in error was defendant below. The case seems to have had a curious history. In 1884, about twelve years ago, Powell & Co. began a suit before a justice of the peace to recover in replevin a lot of personal property, machinery, etc. — in fact, all the property that *492 Benster claimed to own or possess at the time. Some of this property they took on their writ, and some they took without a writ, and other parts of it they destroyed. An action was brought then for destruction of the property, which has been disposed of, and has nothing to do with this case. This is a trial of the aforesaid replevin suit, commenced in 1884, tried before a justice, and appealed to the court of common pleas. There it remained, in a comatose state, until October, 1895, when it was tried, and a verdict rendered for the plaintiff below.. It is claimed that verdict should be set aside.
Powell & Co., when they began this proceeding to get possession of this property, claimed they had bought it of Mr. Benster’s wife, who had shortly before that been residing with him and upon good terms, but who at that time had left him; and that she had claimed to own all property which Benster was in possession of, and that she sold it to Powell & Co., who were engaged in the same kind of business that Benster was undertaking to carry on.
The first notice that Benster had of this sale was when Mr. Powell appeared at his shop, and claimed that he had bought its contents. Mr. Benster refused to deliver it up; and the next morning Mr. Powell came again with a constable and a large force of men and teams, and carried it off. One of the curious features of the case is the manner in which Powell & Go. claim they acquired title to the property. Without consultation with the apparent owner, or any notice to him, the person who was in possession of all of it, they purchase it of that man’s wife.
It is conceded in the case that the plaintiff procured such title as he had to the property in question of Mrs. Benster, and that her title, whatever it was, came by virtue of a written agreement made between her and her husband prior to their marriage, by the terms of which Mr. Benster sold to his intended wife certain chattel property. The agreement *493 itself had been put in evidence before a justice of the peace some twelve years before this trial in the court of common pleas, and there lost or mislaid, and the question of its contents is a material question here, the plaintiff claiming that the paper conveyed practically all the chattel property owned by Benster, while Benster^claimed that it named the articles, and that the ones named were not the ones claimed in this action by Powell & Company.
On the trial of the case before the justice • in 1885, the several claims of these parties were set forth; the wife, who appeared as a- witness there, and Powell & Co. and their witnesses, testified to the contents of this paper as they had seen it the year before. And they also testified in' this trial as to the contents of it, claiming that the paper provided for the conveyance of all Benster’s property to his wife. Benster, the defendant, claimed that it provided for specific personal property. And it was conceded that the paper had been received in evidence before Justice Scott at a time previous when there was a trial of the right of property in which some of this property was involved, having been levied upon by somebody who had a judgment against Benster; and it was conceded practically on this trial as well as that before the justice of this case, that the paper was last seen in Scott’s court. When this case came on for trial, Mr. Benster appeared as a witness in court with a paper which he said was the one, and he testified that he had found that among Mr. Scott’s papers; and what he relates in that respect is absolutely uncontradicted by any evi dencé in the record, except the testimony of the witnesses who testified to the contents of the paper.
„ On this trial in October, 1895, this paper is presented. The plaintiff proceeds to give in evidence from his witnesses the contents of the paper as it originally existed, as they saw and read it; and the witnesses, somewhat remarkably,have no difficulty in remembering exactly what its con *494 tents were, although they were business men, were quite actively engaged in business, and had not seen it for nearly twelve years.
The plaintiff, to make out his case, was bound, of course, to show that he had purchased this property from the woman, and had acquired title to it. To do that he testified himself, and he called other witnesses, among others, J. A. Barber. Mr. Barber claimed that in 1885 Mrs. Benster came to him and employed him to act for her in her difficulties and troubles, and among other things, wanted him to sell this property; and he applied to Powell & Co. as being the ones likely to purchase, they being engaged in the same business, to purchase it; and he did sell it, and sold all of it. Now, the plaintiff was making out this title to this property, and it was competent for him to show- — and really that is the only thing that it was competent for him to show — that he bought the property and paid1 for it, and of whom he bought it, and then perhaps back of that the title of his grantor. He claimed that he bought of Mrs, Benster who claimed to be the owner. In making out his firm’s title and right of possession, he called Mr. Barber, and the following occurred:
“Q. You have stated, yesterday, in your testimony, that you delivered this bill of sale — this property — to Powell, and that you negotiated the sale. A. Yes.
“Q. What was said to him in regard to the title of the property and the statements of Mr. Benster in regard to its wonership ?
That is objected to. The court says:
“The witness may give any statement that he communicated to Mr. Powell, as having been made by Benster before that.
“Witness — Before we secured the sale?
“The Court — Yes; before you secured the sale; not anything after the sale, but up to the time of the consummation of the sale, you may give any statement which you gave to Powell as coming from Benster.
“(To that we except.)
*495 “Witness — I urged Mr. Powell to take this property, and, to convince him that the wife owned it, I gave him a history of the matter. I told him what Mr. Benster had sworn to, and that there could be no possibility of any trouble with his title. I told him that Mrs. Benster owned it, and I didn’t think there would be any question ever' raised about it.
“Mr. Tolerton — Q. Was there anything said to him at the time about what Benster had said to you? A. Yes, sir; I told him that Benster had said to me on numerous occasions that his wife owned that property, and that I would sell- it to him, ’’
Then they called Mr. Prank Powell, and he was asked:
“Q. What, if any, statements did Mr. Barber make to you while negotiating this sale in regard to the title of the property, as to statements made by Mr. Benster ? A. Well, he gave me to understand—
“ (Objected to.)
“The Court — I think that, perhaps, in part, is objectionable. (To the witness): You must confine your statement to telling the jury what Mr. Barber communicated to you as having been said or sworn to by Mr.. Benster before that time.
“Witness' — Mr. Barber told me the title to the property was all right. — ■
“Mr. Tolerton — Q. No; about the statements of Benster. A. Well, he said, with other things, that Mr. Benster had sworn that the property all belonged to his wife, and that it did belong to his wife, and that there was no question of title about it. That was the sum and substance of it all.’’
That is the first error complained of in this record. There are other questions made, but there are none other to which I shall deem it necessary to allude, further than to say that we find no specific errors excepted to in the record.'
Was this evidence competent at this "stage of this case? Mr. Powell was making out his title to his property, and it was proper for him to give in evidence where he procured it, of whom he bought it, and also to further give in evi *496 dexxce, if there was any question made, the title of the person from whom he bought it — in this- case Mrs. Benster— where she got it, how she came by it, who she bought it of. The title to personal property is traced like the title to any othér property, by showing its exchange or its course of passage through the different owners who have held and owned it. 'After all, the question is, Who owns it? It was proper for Powell to show what title he acquired, if he bought it. To make that out it was proper to show the facts attending the sale — not necessarily the conversations, but the facts attending the sale to him, and the sale to any other person through whom it was necessary for him to trace the title. He could show it by the persons who were engaged in the transaction, and he could show it further by circumstances, and by the admissions of the defendant. But here the court seems to have gone off upon the idea that the statements by a person under oath of what he had said that had been said to him would be the same thing as for the witness to testify to what was said to him. Mr. Barber is then permitted to say that he told Powell that Benster had said to him that he had sold this property to his wife. He said that he told Powell that Benster had testified in another case that he had sold this property to his wife. And then Mr. Powell is put on, and he testifies, not to what Benster told him, which would have been competent, and the only thing that would have been, but what Barber told him that Benster said-in a justice’s court, and also to him, Barber. It seems to the court, without any doubt, that this kind of testimony is incompetent. Of course, there might come a' time when some of that' testimony would be competent in the way of rebuttal, after cross-examination; but in making out the plaintiffs’ case, it certainly was not competent to repeat what M, Barber told Mr. Powell, nor what Powell heard Mr. Barber say that Mr. Benster had been saying, no matter where Benster said it; no matter whether it was under oath in another *497 case; no matter whether it had been said to Barber; no matter to whom it had been said. The witnesses could testify to admissions made to him by Benster; that is all he could testify to. We think those were substantial errors.
The controversy in this case turned wholly upon whether the jury should believe, ultimately, that this contract which was brought in by Mr. Benster in this case, was the original document that had been made. The witness who testified in relation to it were Mr. Barber, Mr. Parks, Mr. Hike, and others. They testified that they had seen this, as I say, over, eleven years before,and they were positive that it contained many different things than the paper presented by Mr. Benster contains.
The controversy is over the genuineness of that document. If Mr. Benster had said to Mr. Barber, either in a trial or elsewhere, that he had sold to his wife under an antenuptial contract all his personal property,such a statement would tend to’ contradict the claim which he made on that trial that this paper was the contract, and did not convey all but certain specific articles; it would tend to support and uphold the claim which the plaintiff made in order to sustain his title, that all the property had been conveyed. (When I use the word “all,” I mean all the property involved in this suit.) So, as I have said, the plaintiff, in making out his claim, and in making out his title, was entitled to introduce Mr. Benster’s admissions, but he must introduce them correctly; he could not introduce what somebody else said he had heard Mr. Benster say; else he might go all over town, and call in witnesses, and introduce the statement of not only one witness, but half a dozen. It may be true that there is not much difference between the effect to be given, so far as Barber’s testimony is concerned, to the statement that he told Powell what he claims he had heard Benster say, and his statement on the trial of what Benster said, if he had so testified. But there is . a decided difference in *498 fact. Mr.. Barber did not swear on that trial that Mr. Benster told him this; the only thing he swore to was that he told Mr. Powell that Mr. Benster told him so. What Mr. Barber would have said if asked the direct question, we cannot assume. But if there was no difference in the case of Barber, there was as to Powell. He testified to what Mr. Barber told him, without ever having heard Mr. Benster say a word on the subject, and that testimony certainly was not competent.
Hurd, Brumbach & Thatcher, for plaintiff in error.
E. W. .Tolerton, for defendant in error.
We shall reverse this judgment for the admission of these two items of incompetent testimony. We have some doubt whether this verdict is not against the weight of the evidence, but are not clearly of opinion that it is, and shall not so hold. For myself, I think that a very formidable arraignment of this judgment could be made out from the testimony, but we do not care to express any opinion upon the particular items of testimony, but reverse the judgment upon the ground I have stated, and give the parties an opportunity to try it over.